In re ESTATE OF HOLDEN : MEADOWS' APPEAL.

PROBATE OF WILL.   (1) *Petition to set aside may be quashed when insuf-*
*ficient.*   (2) *When facts stated do not entitle to relief prayed.*   (4, 5)
*Laches goes to right of relief, when.*   (6, 7, 8) *Case stated, petition*
*held insufficient, and laches unexcused.*

In re Estate of Holden: Meadows' Appeal.

1. In the case of a petition to the probate court to set aside the probate of a will, the question of the sufficiency of such petition may be raised by a motion to quash or dismiss it.

2. If the petition states facts which show that the petitioner is not entitled to the relief sought, or fails to state facts showing him so entitled, the motion to dismiss should be granted.

3. Whether the probate court has power to vacate its order admitting a will to probate, upon evidence subsequently discovered of fraud and undue influence in procuring the execution of such will, is not here decided.

4. In an equitable action to set aside the probate of the alleged will of H., brought by his widow in the circuit court, on the ground that the instrument was obtained by fraud and undue influence, this court held, on the case made in the complaint, that the failure of Mrs. H. to require all persons who might reasonably have been supposed to know anything of the circumstances under which the instrument was executed, to appear and testify on the hearing of the application for probate was *laches* which would defeat the action. *Holden v. Meadows* ·31 Wis., 284. And this decision is here approved.

5. Laches goes to the *right of relief*, in whatever court or form of procedure the relief is sought. And the same facts which were held to show laches fatal to the former action, must be equally fatal to a petition asking the probate court to set aside its order admitting the will to probate.

6. Mere *general* averments in this case, that Mrs. H. (plaintiff intestate), as soon as she learned the contents of the will, " instituted an investigation into the facts and circumstances under which it was executed, procured the aid of legal counsel and personal friends, and continued the investigation and caused it to be continued, using every effort in her power to ascertain the facts and circumstances, until the instrument was admitted to probate, but without success," *held* entitled to little weight in determining whether she was guilty of *laches* in not resisting the probate of the will.

7. The petition further states that, pending the application for probate, Mrs. H. stated to the county judge the mental and physical condition of her late husband at the time he executed the instrument in question, and was advised by the judge and her attorney that she could not successfully resist the probate thereof; but it does not state that she informed the judge of her suspicion that the instrument was obtained by fraud or undue influence; nor does it state to what extent her attorney was advised of the facts in the case, or upon what grounds he gave his opinion. *Held*, that the statements recited are not sufficient to excuse her neglect to contest the probate of the will.

8. The petition further states that Mrs. H., before the will was proved, made inquiry of one M. concerning the facts and circumstances of its execution, and that M. assured her that the testator dictated the terms of the instrument, and executed it freely and voluntarily, without the advice or influence of any person. It appears, however, from the petition, that Mrs. H. knew all the facts from which she might have certainly inferred that if the will was obtained by fraud and undue influence, said M. must have been a party to the fraud, as he is now alleged to have been. *Held*, that she was guilty of *laches* in not at least requiring of M. to submit to an examination under oath, when the will was presented for probate.

APPEAL from the Circuit Court for *Walworth* County.

This is a proceeding commenced in the Walworth county court in probate by James Archer, as administrator of the estate of Hannah Holden, late of said county, deceased, to vacate and set aside the probate, granted by that court, of an instrument in writing purporting to be the last will and testament of Simeon Holden deceased, and to revoke and annul such instrument. The subject matter of the proceeding was before this court on two former appeals, and many of the alleged facts out of which it arose are stated in the reports of the cases in which such appeals were taken. Those facts will not be here repeated. *Holden v. Meadows*, 31 Wis., 284; *Archer v. Meadows*, 33 id., 166. It is understood that the petition of Archer in this proceeding is substantially like the complaint in *Archer v. Meadows*.

The only portions of the petition necessary to be stated relate to the condition of Simeon Holden when he executed the instrument which was admitted to probate as his last will, and to the efforts made by Mrs. Holden to ascertain the circumstances of the execution thereof; and these are as follows:

" And your petitioner further alleges, that for a period of about two years before the execution of the said supposed will, said Simeon Holden had been afflicted with the disease of softening of the brain; that for several months before the execution of said supposed will his mind had become affected by said

In re Estate of Holden: Meadows' Appeal.

disease to that extent that his memory and his mental faculties had become very much impaired; and that at the time of executing said supposed will, he was very feeble and weak in mind, but he had in fact sufficient mind and memory to enable him to make a valid will, and was in fact of testamentary capacity."

" And your petitioner further alleges that when said will was presented by the said John Mather to the said county judge as aforesaid, the said Hannah Holden became acquainted with the terms and provisions of said will; that she had no knowledge of the same prior to that time; that immediately upon becoming acquainted with the terms and provisions of said will, said Hannah Holden instituted an investigation as to the facts and circumstances under which the said supposed will was executed; that she procured legal counsel and personal friends to assist her in making such investigation, which investigation said Hannah Holden continued and caused to be continued until the said 30th day of May, A. D. 1866, when the said will was admitted to probate; that during all said period, from the time when said supposed will was presented to said county judge until the same was admitted to probate, as aforesaid, she used every effort and did everything in her power to ascertain the facts and circumstances under which the said supposed will was executed; that in prosecuting such investigation she went personally to the said John Mather to ascertain the facts and circumstances under which said supposed will was executed; that said Mather stated to and assured her that he had not in any way advised or influenced said Simeon Holden in the matter of the said supposed will, and that, so far as he knew or had reason to believe or suspect, he, the said Simeon Holden, had dictated the terms of said supposed will, and had executed the same freely and voluntarily, without being influenced or advised by any one in reference thereto; that in the prosecution of such investigation she was unable to discover, and did not discover, any of the facts or circumstances above set forth un-

der which said will was procured to be executed ; and that after said supposed will was presented for probate, and before the same was admitted to probate, she fully and fairly stated to the said county judge the mental and physical condition of her said husband at the time of the execution of the said supposed will, and that said county judge and her said legal counsel informed and advised her that she could not successfully resist the application for probate of the said supposed will."

" And your petitioner further alleges that the said Hannah Holden had no knowledge or information of any of the facts or circumstances, as hereinbefore set forth, under which the said supposed will was procured to be executed and admitted to probate, until the fore part of the month of May, 1871."

Then follows a history of the two cases above mentioned.

A citation was duly issued and served upon the appellants, who appeared in the county court and filed a motion to quash the citation and dismiss the proceedings, for reasons which are thus stated in the motion: " 1. That it appears from the petition filed herein, that this court has no jurisdiction in the matter.    2. That it appears from the petition that the petitioner, or the person whom he represents, has been guilty of such laches that he is not entitled to relief in this court.    3. That said petition does not state facts sufficient for revoking, setting aside or annulling the will or the probate thereof."    The county court made an order denying the motion and requiring the parties to proceed to examine witnesses on the facts alleged in the petition.    From that order the appellants took an appeal to the circuit court ; and, after argument, that court affirmed the order.    This appeal is from the order of affirmance.

*Finches, Lynde & Miller*, for appellant, to the point, that the petition did not show such diligence as would authorize the setting aside of the will or its probate, cited 3 Graham & Waterman on New Trials, 1026 to 1038 ; 1 id., 560 to 572 ; *Rogan v. Walker*, 1 Wis., 631 ; *Parsons v. Platt*, 37 Conn., 563 ; *Hiller v. Cotton*, 48 Miss., 593.    They argued: 1. That the

petition did not sufficiently excuse laches, referring at length to the facts, as before this court on former appeals, and as stated in the petition.   2.  There was no fraud in obtaining the will as shown by the facts alleged in the petition.   3.  The facts stated in the petition do not show that the will was obtained by undue influence.

*Dixon, Hooker & Palmer*, for respondents.   [No brief on file.]

LYON, J.   The motion in the county court to quash the citation and dismiss the proceedings for the reasons stated therein, is equivalent to a demurrer on the same grounds or for the same reasons, to a complaint in an ordinary civil action. The practice here pursued, of raising the question of the sufficiency of the petition on a motion to quash or dismiss, is a convenient practice and is understood to be in general use. The petition is the foundation of the whole proceeding, and if it fails to show the petitioner entitled to the relief he asks, or any relief, he should be sent out of court.   For, certainly, in such case, he can be in no better position than a plaintiff in a civil action, whose complaint is defective.   Hence, if the petition in this proceeding fails to state facts sufficient to show that the petitioner is entitled to relief, or if it states facts which show that he is not so entitled, the motion to quash and dismiss should have been granted, and the circuit court erred in affirming the order denying such motion.

This is the third attempt to set aside the probate of the alleged will of Simeon Holden, deceased.   The first was by his widow, who commenced an action in the circuit court for that purpose.   The case came to this court on an appeal from an order sustaining a demurrer to the complaint, and the order was affirmed on the ground that it appeared by the complaint itself that the plaintiff had been guilty of laches, by failing to take any steps to resist the probate of the will, and by delaying nearly five years before she commenced an action to set it aside, and hence, that a court of equity should not entertain her

complaint.   The question of the jurisdiction of a court of equity to set aside the probate of a will, was argued in the case and somewhat discussed in the opinion, but was not determined. *Holden v. Meadows*, 31 Wis., 284.

Soon after the cause was decided, Mrs. Holden died, leaving the petitioner, *James Archer*, her son by a former marriage, and her sole heir-at-law.   *Archer* was duly appointed administrator of the estate of his mother, and thereupon commenced another action in the same court and for the same purpose.   His complaint contains allegations of fact, not found in the complaint in the first action, made for the purpose of excusing the delay of his mother, which had been held to be laches on her part. That cause was also brought here by an appeal from an order sustaining a demurrer to the complaint.   On that appeal, this court did not determine, or even consider, the question whether such delay of Mrs. Holden was or was not satisfactorily excused, but held that a court of equity has no jurisdiction of such an action, and for that reason affirmed the order of the circuit court.   *Archer v. Meadows*, 33 Wis., 166.   The petition in this proceeding is understood to contain, substantially, the same averments of fact as were contained in the complaint of *Archer;* and those which were made to excuse the delay and to remove the presumption that laches was to be imputed to Mrs. Holden, will be found in the foregoing statement of the case.

In *Archer v. Meadows*, Chief Justice Dixon filed an opinion (not a dissenting opinion as the learned counsel for the appellants seems to suppose), to the effect that he concurred in the decision on the sole ground that the probate court has full power to grant the relief sought, and hence that the interposition of the court of equity was unnecessary.   The other members of the court neither concurred in, nor dissented from, this position, but expressly left the question undetermined.   They felt bound by authority to hold that a court of equity had no jurisdiction of the case, without any regard to the question of power in the county court to grant the desired relief.   The

conclusion we have reached on the question of the laches of Mrs. Holden renders it quite unnecessary on this appeal to determine or define the limits or extent of the power of the probate court over its own orders, decrees or judgments.

In *Holden v. Meadows* it was held that the delay to commence proceedings for nearly five years after the alleged will was admitted to probate, and until the estate was nearly settled, presumptively was laches, which, if unexcused, would defeat the action. Although that action was brought in a court of equity, yet it is obvious, and is not denied, that if such court could have taken jurisdiction, the same laches which would have defeated the action in that court will defeat this proceeding. Laches goes to the right to relief, no matter in what court or form of procedure the relief is sought. And this brings us to consider whether the petition of *James Archer*, which is the foundation of this proceeding, states facts which, if true, excuse the delay of Mrs. Holden and show that laches should not be imputed to her by reason of such delay.

It is averred in the petition, generally, that when Mrs. Holden learned the contents of the alleged will, she instituted an investigation into the facts and circumstances under which it was executed; that she procured the aid of legal counsel and personal friends; and that she continued the investigation, and caused it to be continued, using every effort in her power to ascertain such facts and circumstances, until the instrument was admitted to probate, but without success. With certain exceptions, which will presently be stated, the petition does not inform us what was done by Mrs. Holden, her legal advisers or personal friends, in pursuing such investigation. It is scarcely necessary to say that these general averments can have but little weight in determining the question under consideration.

The petition contains some specific averments on the same subject. These are, that pending the application for probate, she stated to the county judge the mental and physical condi-

tion of her late husband at the time he executed the instrument propounded as his last will; that the judge and her attorney advised her that she could not successfully resist the probate thereof; that she made inquiry of Mather concerning the facts and circumstances of the execution of such instrument; and that Mather assured her that the testator dictated the terms of the instrument, and executed it freely and voluntarily, without the advice or influence of any person whomsoever.

The information which Mrs. Holden gave the county judge must have been to the effect that her late husband, although weak in body and mind, had testamentary capacity when he executed the instrument. Having been so informed, and seeing from the instrument itself that the testator had made rational provision for all those who might reasonably be supposed to have any claim upon his bounty, it was very natural that the judge should think it useless to resist the probate. Had Mrs. Holden further informed him that she suspected (as she evidently did suspect) that the execution of the instrument was obtained by fraud and undue influence, he might have given her very different advice. But, so far as it appears by the petition, she communicated with the judge on the subject of testamentary capacity alone. No importance can be given to the advice of her counsel, for we are not informed by the petition of the grounds upon which it was given, or to what extent he was advised of the facts in the case.

The interview which Mrs. Holden had with Mather was a very proper step in her investigation. But she knew (quoting from the petition) " that for several years prior to the execution of the said supposed will, the said John Mather and the said Simeon Holden were intimate personal friends; that said Simeon Holden for many years before his death consulted with said Mather on all important business matters; and relied and acted upon his opinion and advice as that of a most intimate and confidential friend; that from the time he became afflicted with said disease, said Simeon Holden acted in almost all his

business matters solely upon the counsel and advice of said Mather; * * and that for several weeks before the execution of said supposed will, said Elizabeth H. Meadows lived in the family of said Mather, and was then, and for years previous thereto had been, on terms of intimate friendship with him and his family." Knowing these facts, and knowing the feeble condition of her husband at the time, Mrs. Holden had every reason to believe that, if the alleged will was obtained by fraud and undue influence, Mather must have been cognizant of the fact, if not a party to the fraud; and she could not, without laches, rest upon his mere denial, and cease all further efforts to discover the fraud. The least she could do was to require him to submit to an examination under oath.

In this connection, it may be further observed that the petition fails to state the means by which Mrs. Holden discovered the alleged fraud; and it does not appear therefrom that she made any effort to discover it after the will was admitted to probate. Neither does it appear (unless by doubtful inference), that the testator, at any time previous to the execution of the will, had contemplated any other or different disposition of his property.

In *Holden v. Meadows, supra,* on the case made by the complaint, we thought, and so held, that the failure of Mrs. Holden to require all persons who might reasonably have been supposed to know anything of the circumstances under which the alleged will was executed, to appear and testify on the hearing of the application to admit the same to probate, was laches on her part, and defeated the action. After most careful consideration, we are impelled to the conclusion that the facts stated in the present petition are insufficient to excuse such failure. Hence, notwithstanding the existence of those facts, it must be held that the failure of Mrs. Holden to resist the probate, in the manner indicated in *Holden v. Meadows,* was laches, fatal to this proceeding.

It follows that the order of the circuit court affirming the

order of the county court must be reversed, and the cause remanded for further proceedings according to law.

*By the Court.* — It is so ordered.