LEWIS *v.* COUNTY COMMISSIONERS OF BARBOUR COUNTY.

*(Circuit Court, D. Kansas.   July 23, 1880.)*

1. MUNICIPAL BONDS—NEGOTIABILITY—LEGISLATURE.—It is competent for the legislature to make the negotiability of municipal bonds dependent upon their delivery by the treasurer of state.

2. SAME—BONA FIDE PURCHASER—FRAUD.—A purchaser of such bonds, purporting upon their face to have been issued under the provisions of a statute containing such condition, is not a *bona fide* purchaser without notice, where such bonds were fraudulently issued, without being delivered by the treasurer of state.

*Grant & Grant,* for plaintiff.

*Edward Stilling* and *Thomas P. Fenlon,* for defendants.

McCRARY, C. J.   This is an action brought to recover judgment upon certain municipal bonds issued by the authorities of Barbour county, Kansas.   By agreement of parties a jury has been waived, and the cause submitted to the court upon an agreed statement of facts.

The defence is that the bonds were *fraudulently* issued, and that plaintiff is not a *bona fide* holder for value.

The agreed statement shows, and counsel for plaintiff admit, that the bonds were fraudulently issued, so that the only question for determination is as to whether the plaintiff is a *bona fide* purchaser without notice.

The bonds upon their face purport to have been issued under the provisions of an act of the legislature of Kansas, entitled "An act to authorize counties, incorporated cities, and municipal townships to issue bonds for the purpose of building bridges, aiding in the construction of railroads, water powers, and other works of internal improvements, and providing for the registration of such bonds," etc.   Laws 1872, c. 68, p. 110.

The eleventh section of the act is as follows:

"Sec. 11. That if the proposition for which bonds were voted be to aid in the construction of a railroad, or any bridge or other work of internal improvement, either by donations thereto or the taking of stock therein, then, upon the subscription being made therefor as hereinbefore provided,

the officers of such county, city, or township [shall thereupon issue the bonds of such county, city, or township] for the amount of such subscription, and shall forthwith deliver the same, together with the original or a copy of the subscription —setting forth its terms in full—to the treasurer of state, which said bonds shall be held by the said treasurer of state in escrow, until the conditions in the terms of said subscription to such railroad or other work of internal improvement shall be in all things fully complied with; that upon the conditions of the said subscription being in all things fully complied with, then the treasurer of state shall deliver such bonds to the parties entitled thereto, who shall have the same registered as hereinafter provided: *provided, that such bonds shall not bear interest or be negotiable until after the delivery and registration thereof;* and *provided further,* that in case of a failure to comply with the conditions in the terms of such subscription, then such bonds shall be by said treasurer of state cancelled and redelivered to the county, city, or township issuing the bonds; and *provided further,* that this section shall not apply where the people may have named some party as trustee in their vote on the proposition, and the contractor may thereafter agree to the same."

The meaning of this section is plain. It was intended to protect the tax payers of the counties in Kansas against an unauthorized or fraudulent issue of bonds under the act without a compliance with its provisions. Prior to its passage the law had been settled that, in the absence of legislation to the contrary, bonds purporting on their face to have been issued and delivered by the authorities of a county in pursuance of law, operated in the hands of a *bona fide* purchaser to estop the county from denying their validity.

The legislature of Kansas undertook to provide by law certain safeguards against fraud. These are set out in the act above mentioned. All such bonds were to be delivered to the treasurer of state, to be held by him in escrow, until the terms of subscription should be fully complied with, and *upon such compliance* to be by him delivered to the parties entitled thereto. Such delivery by the treasurer is made by

the act a condition precedent to the negotiability of the bonds. The proviso declares "that such bonds shall not bear interest *or be negotiable* until after the delivery and registration thereof." The agreed statement shows that the bonds in question were by the terms of the subscription to be placed in the hands of the treasurer of state, in escrow; to be delivered, $50,000 when the railroad subscribed to should be completed to Medicine Lodge, and $50,000 when through the county; that no part of the railroad was ever built; that the bonds were not delivered to the treasurer, but to one Hutchinson, who procured their registration by the auditor of state, and fraudulently put them in circulation. They were never in the hands of the treasurer of state, and were, of course, never delivered by him.

If, therefore, the statutory provision above quoted is to have the force and effect evidently intended by the legislature, the bonds must be held non-negotiable and bad in the hands of the plaintiff. But it is strongly urged by the counsel for plaintiff that the county is estopped to deny the negotiability of the bonds, because they appear on their face to be negotiable, and purport to be issued in accordance with the statute. I suppose it is competent for the legislature of a state to prescribe such conditions as it may deem proper with respect to the negotiability of any bonds it may authorize a municipality to issue. It may provide that such bonds shall not be negotiable at all; and, if so, why may it not also provide that they shall be negotiable only upon condition that they pass through the hands of the treasurer of state, and are by him delivered? This imposes upon the purchaser only the duty of examining the records of a public office, or of inquiring for information of a public officer, to ascertain the fact. The authorities are uniform that such a purchaser must take notice of the terms of the statute under which such bonds are issued, as if the same were set out in full on the face of the bonds.

In delivering the unanimous opinion of the supreme court, in *McClure* v. *Township of Oxford*, 94 U. S. 429, Mr. Chief Justice Waite said: "To be a *bona fide* holder, one must be

himself a purchaser for value without notice, or the successor of one who was. Every man is chargeable with notice of that which the law requires him to know, and of that which, after being put upon inquiry, he might have ascertained by the exercise of reasonable diligence. Every dealer in municipal bonds which, upon their face, refer to the statute under which they were issued, is bound to take notice of the statute and of all its requirements."

True, the purchaser may presume compliance with such provisions of the statute as relate to the manner of exercising powers conferred by law upon officers of the county. If the power to issue the bonds exists in law, and the bonds recite a compliance with it, the recital is conclusive. *Orleans* v. *Platt*, 99 U. S. 676. But this doctrine applies to negotiable instruments having the property of commercial paper. It has never been extended to a case like the present, where, by the terms of the statute, the instrument is declared not negotiable until delivered to the treasurer of state, and by him to the party entitled thereto. If this provision is to be regarded as incorporated in the bonds, then, how can it be said that the instruments are negotiable on their face? If we are to read the statute as a part of each bond, then they appear on their face to be negotiable only upon the condition named in the act.

If a corporation should issue a bond negotiable only when countersigned by its president, no lawyer would doubt that a purchaser would take it at his own peril if not so counter-signed. It is difficult to discover the difference between such a case and one where the bond appears by its terms to be negotiable only upon the condition that it shall pass through the hands of a state officer, and be by him delivered. If it appeared in this case that the bonds were delivered to the treasurer of state, and by him to an innocent purchaser, I am not prepared to say that this would not be a sufficient protection to the holder, even if the delivery had been wrongful.

The decision of the treasurer upon the question of compliance with the terms of the subscription would, I think, estop the county, for the county made him its agent for the pur-

pose of deciding that question.    But since it appears that the bonds were never delivered to the treasurer, and that the purchaser might have ascertained that fact by an inquiry addressed to that official, I am of the opinion that he purchased at his peril.    To hold otherwise would be to nullify the statute, which was passed for the very purpose of providing certain safe-guards against the fraudulent issue of bonds by agents of the county.    If the statute is construed so as to permit such agents to estop the county by such fraudulent issue, the statute is without vitality.    I think the statute is notice to the purchaser of bonds issued under its provisions that such bonds are not negotiable unless delivered through the treasurer of state, and that such purchasers must make inquiry as to the fact, or purchase at their own risk.    The bonds were not negotiated by the agent authorized by law, to-wit, the treasurer of state.    If that official had negotiated them, the *bona fide* holder might, as already suggested, be protected upon the ground that the treasurer was presumably performing his duty, and the purchaser had the right to rely upon that presumption.    But these bonds were negotiated by a stranger, having no official relation to the county.    Whoever buys under such circumstances must inquire as to whether the treasurer of state has delivered the bonds.    The law constituted the treasurer of state the agent of the county for the purpose of issuing these bonds, and made their negotiability dependent upon the condition precedent of delivery by him.    If he had performed this duty—if he had *acted* as agent—however irregular or even unlawful his action, the county might be estopped.    But not so where he did not act at all, and the bonds were set afloat by the fraudulent act of another.    No representations by a pretended agent can ever establish the fact or extent of agency.

If Hutchinson represented that he was authorized to negotiate the bonds, he could not thereby bind the county.    The agent of the county for the purpose was named by law as well as by the act of the county, and there was no excuse for accepting without inquiry, as final, the statements of any other person.    *N. Y. Life Ins. & Trust Co.* v. *Beebe,* 3 Seld.

364. The plain meaning of the statute is that the bonds are not to be regarded as issued until delivered under the act by the treasurer of state. Until so delivered they are in escrow, and of this the public has notice in the terms of the law itself.

In *Chisholm* v. *City of Montgomery*, 2 Woods, 584–595, Mr. Justice Bradley said: "The plea that the city is estopped by the act of its officers, by the resolutions of the city council, or by the negotiable form or other matter in the bonds themselves, from denying the authority of such officers to pledge the faith of the city in aid of said plank roads, and to issue the bonds in question, cannot be maintained. Public officers cannot acquire authority by declaring that they have it. They cannot thus shut the mouth of the public whom they represent. The officers and agents of private corporations, entrusted by them with the management of their own business and property, may estop their principals and subject them to the consequences of their unauthorized acts. But the body politic cannot be thus silenced by the acts or declarations of its agents. If it could be, unbounded scope would be given to the peculations and frauds of public officers. I hold it to be a sound proposition, that no municipal or political body can be estopped, by the acts or declarations of its officers, from denying their authority to bind it. *The Floyd Acceptances*, 7 Wall. 666. Finally, the plea that the plaintiffs are *bona fide* holders of the bonds cannot avail where the defence is want of power to issue them. Of this defect the plaintiffs were bound to take notice. Had the power to issue the bonds existed, and had the question been whether certain preliminary conditions had been complied with, the plea might, under certain circumstances, have been a good one."

If this is the law when an officer of the corporation has executed his power, *a fortiori* it is the law of the present case, where the officer who was authorized did not act at all, and an outsider, for purposes of fraud, undertook to do so.

The conclusion reached renders unnecessary any consideration of the questions discussed by counsel.

Judgment for defendants.