DAVEY et al. v. DODGE et al.

(Circuit Court of Appeals, Eighth Circuit. March 25, 1914.)

No. 4056.

1. LIMITATION OF ACTIONS (§ 37*)—STATUTES APPLICABLE—"ACTIONS FOR RELIEF ON THE GROUND OF FRAUD."

A creditor's suit to set aside conveyances by the debtor as having been made to cheat and defraud his creditors is an action for relief on the ground of fraud, within the meaning of Cobbey's Ann. St. Neb. 1911, § 1004, by which such an action is barred in four years after discovery of the fraud.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 182–186, 477; Dec. Dig. § 37.*]

2. COURTS (§ 375*)—FEDERAL COURTS—FOLLOWING STATE STATUTE—LACHES.

While, in the application of the doctrine of laches in an equity suit, a federal court is not bound by a state statute of limitations, it will usually act or refuse to act in analogy to the state statute limiting actions at law of like character.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 983; Dec. Dig. § 375.

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

3. FRAUDULENT CONVEYANCES (§ 249*)—CREDITOR'S SUIT—LACHES.

Defendants, in a creditor's suit to enforce collection of judgments 17 years old against property alleged to have been fraudulently transferred to them by, or at the instance of, the judgment debtor, had been in the peaceable possession of such property for many years longer than sufficient to bar an action for its recovery under the state statute, and the transfers of most of the property to them were matters of record. The decisions of the Supreme Court of the state required due diligence to discover fraud in order to prevent the running of the statute of limitations against an action based on that ground, and under Cobbey's Ann. St. Neb. 1911, §§ 1538, 1541, and 1543, complainants were entitled, at any time after return of execution unsatisfied, to an order for the examination of defendants and the judgment debtor with respect to such transfers. The suit was not commenced until after the death of the judgment debtor and others of the persons concerned in the transfers. *Held* that, under all the facts, it was barred by laches.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 735–737; Dec. Dig. § 249.*]

Appeal from the District Court of the United States for the District of Nebraska; William H. Munger, Judge.

Suit in equity by Mary Davey, executrix of the will of John M. Davey, deceased, and Henry Harney, against Charles F. Dodge, administrator of the estate of George W. E. Dorsey, deceased, and others. Decree for defendants, and complainants appeal. Affirmed.

H. C. Brome and Daniel L. Johnson, both of Omaha, Neb. (J. J. McCarthy, of Ponca, Neb., Frank Dolezal, of Fremont, Neb., and S. O. Cotner, of Omaha, Neb., on the brief), for appellants.

E. F. Gray, of Fremont, Neb. (George L. Loomis, of Fremont, Neb., on the brief), for appellees.

Before SANBORN and CARLAND, Circuit Judges, and RINER, District Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

CARLAND, Circuit Judge. This is a creditors' bill filed May 31, 1912, by John M. Davey and Henry Harney, as the owners of three judgments, against one George W. E. Dorsey, amounting in round numbers at the time the bill was filed to $69,900. The judgments were rendered by the United States Circuit Court for the District of Nebraska in 1894 and 1895, in suits brought by Watkins, as receiver of the First National Bank of Ponca, and were purchased by Davey and Harney in February, 1898, for $600.

Davey died after decree, and Mary Davey, as executrix, has been substituted. The trial court on final hearing dismissed the bill. Before the filing of the same George W. E. Dorsey, the judgment debtor and chief conspirator, Emma E. Dorsey, his first wife, Emeline Benton and Cornelia Bunnett, co-conspirators, had died. Laura H. Dorsey and Maria Louise Dorsey, who now claim to be the owners of the property in controversy, are, respectively, the widow and sister-in-law of George W. E. Dorsey. As the defense of laches and, in connection therewith, the statute of limitations of Nebraska are pleaded, it becomes necessary to examine the bill in order to ascertain the character of the action. After describing the property sought to be reached, which is situated in Dodge county, Neb., the bill alleges as set out in the margin.[1]

[1] "Your orators further allege and show that on or about the 2d day of May, 1893, the said Dorsey, contriving and intending and designing to cheat and defraud persons out of their money and property, and make himself then and thenceforth secure against each and all persons to whom he was then and to whom thereafter he should become indebted for moneys borrowed and for property purchased on credit from them, formed and contrived the following fraudulent scheme, plan, and design, to wit, to place his property then owned by him, and such property as he might thereafter acquire, and which he desired to hold and retain for his own purposes in secret trust in the names of other persons and corporations to hold for him in secret trust, so that thereby his ownership thereof would be concealed from the courts and from his creditors, and so that he might exercise his control over the same and so keep the same in secret trust under the false guise and appearance as acting as agent of such persons so holding said property in secret trust for him; that, pursuant to his aforesaid plan and design of secret trust, said Dorsey began the purchase of various properties and had the title thereto direct from the sellers thereof placed in the name of his then wife, Emma E. Dorsey, thus creating the false appearance of said Emma E. Dorsey being the purchaser thereof, when in truth and fact said Emma E. Dorsey had no property and was not engaged in any gainful occupation, but remained a housewife dependent upon said Dorsey for her support and had no business experience or training and was unable and incompetent to engage in the business of acquiring property; that said Dorsey, when he placed said fraudulent design and scheme into operation, was engaged in prosperous business, making much money, and had acquired much property, and to make the aforesaid secret trust and scheme falsely appear the better concealed, worked the placing of said property into the hands of said Emma E. Dorsey gradually and slowly and in discreetly small amounts at one time, and caused himself to be indebted in a large amount to the defendant Farmers' & Merchants' National Bank, and to secure such indebtedness gave a mortgage upon a large part of the property then in his name, and defaulted in payment, and got said mortgage thereby foreclosed and said property sold in such foreclosure and bought in by said bank, and thereafter contracted to purchase said real estate from said bank in the name of the Fremont Realty Company, a corporation managed, controlled, and organized by the said Dorsey for that purpose, and then, such as he desired to be kept in secret trust, he procured said bank in small pieces

After allegations in regard to the transfer of specific property, the
following general allegation is made:

"That all of the property above described was either owned by the said
Dorsey, after the debt due to these plaintiffs had been incurred and by him
fraudulently conveyed to his relatives and the relatives of his wife, for the
purpose of hindering, delaying, and defrauding his creditors, or the same was
purchased and paid for by him out of his own funds and the title thereto
taken in the name of his first wife, Emma E. Dorsey, her sister Maria Louise
Dorsey or Laura H. Dorsey, now and that the same are now held in trust for
the estate of said George W. E. Dorsey."

The prayer of the bill, so far as material, is as follows:

"That the deeds of conveyance from the said George W. E. Dorsey to the
aforesaid parties for the premises above named and all thereof, and that the
will of the said Emma E. Dorsey, in so far as the same affects the property
above described, and the deeds of conveyance from the said Maria Louise
Dorsey, may each and all be set aside and held for naught, and the above-
described real estate be decreed to be the property of the estate of the said
George W. E. Dorsey, and that the transfer of the shares of capital stock of
the Farmers' & Merchants' National Bank above described may be decreed to
be fraudulent and void, and that the said stock is the property of the estate
of said George W. E. Dorsey."

There was an amendment to the bill which set forth in substance:
That, in the years 1869, 1870, and 1874, George W. E. Dorsey obtain-

to deed the same to the said Emma E. Dorsey and some to the Western
Realty & Investment Company, a corporation managed, controlled, and organ-
ized by the said Dorsey for that purpose, and then to the defendant Maria
Louise Dorsey, and also deeded certain of the aforesaid property to the de-
fendant Jennie A. Gibson in the name of Jennie Christa Benton, all of which
said property was the property of the said Dorsey, and fraudulently as afore-
said by the aforesaid persons held in secret trust for him and controlled and
managed by him under the false guise and appearance as agent of the afore-
said parties, and that the same Emma E. Dorsey becoming in failing health, the
said Dorsey to keep and continue said secret trust for himself and the operation
and working of his said fraudulent scheme and plan, the said Emma E. Dorsey
aiding him therein, said Dorsey fraudulently caused the said Emma E. Dorsey
to make an instrument in writing for that purpose in the form of a last will
and testament, purporting to devise all of the property aforesaid, and all prop-
erty so by her held in secret trust for the said Dorsey, to the defendant Maria
Louise Dorsey, providing, however that said Dorsey should be sole executor,
so as to have and retain control and management of said property, and fraud-
ulently, upon the death of said Emma E. Dorsey, caused the said fraudulent
instrument in the form of a last will and testament as aforesaid to be probated
in the county court of said Dodge county, and the falsely apparent estate of
said Emma E. Dorsey to be administered for the fraudulent purpose of thereby
causing, in form of law, the transfer of the apparent legal title of said prop-
erty, so held in secret trust for him by the said Emma E. Dorsey at the time
of her death, to said Maria Louise Dorsey, and to have the same concealed,
and to appear under the false guise of having passed by devise from said
Emma E. Dorsey, deceased, to said Maria Louise Dorsey, and to make it
falsely appear that said Maria Louise Dorsey was the real owner thereof, and
to conceal the more effectually the said secret trust; that said Maria Louise
Dorsey, who is the sister of said Emma E. Dorsey, deceased, and a confidant of
said Dorsey, conspired and confederated with the said Dorsey to so as afore-
said aid said Dorsey in the carrying on of his aforesaid fraudulent scheme and
device and plan to cheat and defraud his creditors, and who was the wife of
the brother of said Dorsey and agreed with said Dorsey to so appear and
act as such devisee of said property from her sister, the said Emma E. Dorsey,
and to hold said property in secret trust for said Dorsey, and, in consideration
of her said services and the use of her said name, the said Dorsey paid said

ed three policies of insurance on his life from the Mutual Life Insurance Company of New York, aggregating $10,000, and in which policies Emma E. Dorsey was named as the beneficiary, with the proviso that, if she died before the insured, then the amount of the policies should be payable to her children, their guardian, executor, or administrator. That George W. E. Dorsey paid the premiums on said policies down to the date of his death, June 12, 1911. That Emma E. Dorsey died in 1903, leaving no children nor issue of any deceased children.

"That said George W. E. Dorsey, for the purpose of hindering, delaying, and defrauding his creditors, including these plaintiffs, caused Maria Louise Dorsey to be named in each and all of said life insurance policies, as beneficiary thereof, and later, and after the marriage of the said George W. E. Dorsey to Laura H. Dorsey, the above-named defendant, said Maria Louise Dorsey and George W. E. Dorsey, on the 9th day of June, 1905, by an instrument in writing by them signed, made a pretended assignment and conveyance of said policies of life insurance, and each of them, to Laura H. Dorsey, and, after the death of the said George W. E. Dorsey, said Laura H. Dorsey collected from said Mutual Life Insurance Company the full amount of the money named in each and all of said policies of life insurance, together with the accumulations thereon, in an amount to these plaintiffs unknown. That, at the time of the death of the said Emma E. Dorsey, each and all of the said life insurance policies had large cash surrender values, and that the same was the property

Maria Louise Dorsey a regular monthly stipend as his employé, and the said Dorsey remained in the actual control and enjoyment of said property under the false guise and appearance of agent and attorney in fact of said Maria Louise Dorsey, and so remained up to the time of his death, as to all of the said property now in the hands of said Maria Louise Dorsey, using said Maria Louise Dorsey as apparent purchaser in conveyances of property bought or acquired by him and which he desired to be kept in secret trust for him; that said Jennie A. Gibson is the sister of said Emma E. Dorsey and a confidant of said Dorsey, and with whom said Dorsey made his home after the death of said Emma E. Dorsey, and the maiden name of said Jennie A. Gibson was Jennie Christa Benton, and the said property so conveyed to said Jennie A. Gibson in the name of Jennie Christa Benton by said Emma E. Dorsey and said Dorsey was taken by said Jennie A. Gibson under a secret trust and under the aforesaid fraudulent plan and scheme of said Dorsey, and is held by said Jennie A. Gibson in her said maiden name in secret trust for the use and benefit of said Dorsey, and was managed and controlled by him; that thereafter, to wit, some years after the death of said Emma E. Dorsey, the said Dorsey married the defendant Laura H. Dorsey, who, after her marriage, joined the said Dorsey in the aforesaid fraudulent scheme and plan of keeping his said property concealed and to be held in secret trust for him, and, pursuant to her said aiding and abetting said Dorsey in his said fraudulent scheme and plan and to more effectually conceal the trust, the said property of said Dorsey so held for him in secret trust by said Maria Louise Dorsey was by the direction of said Dorsey, and is being now by his direction on the working of his aforesaid fraudulent scheme and design, fraudulently transferred and conveyed from said Maria Louise Dorsey to said Laura H. Dorsey, and that all the said conveyances of aforesaid property from said Maria Louise Dorsey to said Laura H. Dorsey are without any consideration paid by said Laura H. Dorsey to said Maria Louise Dorsey and are taken and accepted and held by the said Laura H. Dorsey in secret trust as the property of and for the use and benefit of said Dorsey, and all the aforesaid property so levied on which now stands in different parts and parcels, respectively, in the names of Maria Louise Dorsey, Laura H. Dorsey, and Jennie A. Gibson, in her maiden name of Jennie Christa Benton, is the property of said Dorsey held for him in secret trust and so placed by him in the execution and operation of his aforesaid fraudulent plan and design."

of and belonged to the said George W. E. Dorsey, and that the change of beneficiary in said policies to Maria Louise Dorsey and the assignment from said Maria Louise Dorsey and George W. E. Dorsey to said Laura H. Dorsey was done with the intent to hinder, delay, and defraud the creditors of the said George W. E. Dorsey, all of which was unknown to these plaintiffs until the year 1912."

With reference to this amendment, the bill prayed that the pretended change of beneficiary and assignment of said policies of insurance be declared null and void, and that the proceeds of the policies be declared to be a part of the estate of George W. E. Dorsey. Without ruling upon the application to amend the bill to correspond with the proof, made after decree, we will take into consideration all testimony in the record bearing upon the question of laches, as there was no objection thereto upon the ground that the matter was not pleaded.

[1] We think an examination of the bill conclusively shows that the action was brought by appellants to set aside transfers of property by Dorsey, for the reason that they were made by him in order to cheat and defraud his creditors, or, in other words, that the action is one for relief on the ground of fraud. Cobbey's Annotated Statutes of Nebraska 1911, §§ 1004, 1011, provides as follows:

"Civil actions can only be commenced within the time prescribed in this title, after the cause of action shall have accrued. * * * Within four years, * * * an action for relief on the ground of fraud, but the cause of action in such case shall not [be] deemed to have accrued until the discovery of the fraud."

[2] In the application of the doctrine of laches, the federal courts in equitable actions are not bound by the statute of limitations of Nebraska, but they will act or refuse to act in analogy to such statute. Judge Sanborn, in delivering the opinion of this court in Kelley v. Boettcher, 85 Fed. 55, 29 C. C. A. 14, stated the rule as follows:

"In the application of the doctrine of laches, the settled rule is that courts of equity are not bound by, but that they usually act or refuse to act in analogy to, the statute or limitations relating to actions at law of like character. Rugan v. Sabin, 10 U. S. App. 519, 534, 3 C. C. A. 578, 582, 53 Fed. 415, 420; Billings v. Smelting Co., 10 U. S. App. 1, 62, 2 C. C. A. 252, 262, 263, 51 Fed. 338, 349; Bogan v. Mortgage Co., 27 U. S. App. 346, 357, 11 C. C. A. 128, 135, 63 Fed. 192, 199; Kinne v. Webb, 12 U. S. App. 137, 148, 4 C. C. A. 170, 177, 54 Fed. 34, 40; Scheftel v. Hays, 19 U. S. App. 220, 226, 7 C. C. A. 308, 312, 58 Fed. 457, 460; Wagner v. Baird, 7 How. 234, 258 [12 L. Ed. 681]; Godden v. Kimmell, 99 U. S. 201, 210 [25 L. Ed. 431]; Wood v. Carpenter, 101 U. S. 135, 139 [25 L. Ed. 807]. The meaning of this rule is that, under ordinary circumstances, a suit in equity will not be stayed for laches before, and will be stayed after, the time fixed by the analogous statute of limitations at law; but, if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer, period than that fixed by the statute, the chancellor will not be bound by the statute, but will determine the extraordinary case in accordance with the equities which condition it. * * * When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant to show, either from the face of the bill or by his answer, that extraordinary circumstances exist which require the application of the doctrine of laches; and, when such a suit is brought after the statutory time has elapsed, the burden is on the complainant to show, by suitable averments in his bill, that it would be inequitable to apply it to his case."

The above rule has been uniformly applied in the following cases: Boynton v. Haggart, 120 Fed. 821, 57 C. C. A. 301; Wyman v. Bowman, 127 Fed. 257, 62 C. C. A. 189; Wilson v. Plutus Mining Co., 174 Fed. 317, 98 C. C. A. 189; Broatch v. Boysen, 175 Fed. 702, 99 C. C. A. 278; Burgess v. Hillman, 200 Fed. 929, 119 C. C. A. 225.

[3] It appears from the record that about 17 years elapsed after the rendition of the judgments which appellants own before the bill in this case was filed. During about 14 years of this time, appellants were the owners thereof. For a period much longer than the statute of limitations of Nebraska, Laura H. Dorsey and Maria Louise Dorsey were in the peaceable possession of the property in controversy. At any time after the rendition of the judgments and return of execution unsatisfied, Dorsey and the parties to whom he had conveyed property could have been examined with reference thereto under the following statute of Nebraska:

"When an execution against the property of a judgment debtor * * * is returned unsatisfied * * * the judgment creditor is entitled to an order from a probate judge or a judge of the district court * * * requiring such debtor to appear and answer concerning his property. * * * No person shall, on examination * * * be excused from answering any question on the ground that his examination will tend to convict him of fraud. * * * Proof by affidavit * * * that any person or corporation has property of such judgment debtor, or is indebted to him, the judge may, by an order, require such person or corporation, or any officer or member thereof, to appear * * * and answer concerning the same." Cobbey's Ann. St. 1911, §§ 1538, 1541, and 1543.

See, also, In re Estate of Holden, 37 Wis. 98, in reference to the duty of a judgment creditor under such a statute.

The conveyances of real estate made by Dorsey were all on record: the transfer of bank stock was matter of record; the will of Emma E. Dorsey was probated in Dodge county, Neb. Dorsey was supposed to be insolvent at least as early as the date of the judgments. Appellants had notice of these facts and the means to discover any fraud in relation thereto which might exist. No records were ever examined, nor in fact was anything done to discover fraud except to ask people, including Dorsey, if he (Dorsey) had any property with which to satisfy his debts; and the record justifies the assertion that the bill in the present case would not have been filed except for a statement relative to the Coad Case, which appeared in a newspaper.

The Supreme Court of Nebraska has construed the statute of limitations, herein quoted, as requiring due diligence to discover fraud, and that one having knowledge of a fraud or of such facts in connection therewith as would put a person of ordinary intelligence and prudence upon inquiry that would have led to such knowledge is barred by the statute. Parker v. Kuhn, 21 Neb. 413, 32 N. W. 74, 59 Am. Rep. 838; Gillispie v. Cooper, 36 Neb. 776, 55 N. W. 302; State Bank of Pender v. Frey, 2 Neb. (Unof.) 83, 91 N. W. 239; Wright v. Davis, 28 Neb. 479, 44 N. W. 490, 26 Am. St. Rep. 347. Such is the law generally. E. B. Pickenbrock & Sons v. Knoer, 136 Iowa, 534, 114 N. W. 200; Wood v. Carpenter, 101 U. S. 135, 25 L. Ed. 807; In re Estate of Holden, supra; Woodfold v. Marley, 98 Tenn. 467, 40 S. W. 479; Redford v. Clark, 100 Va. 115, 40 S. E. 630; Redd v. Brun,

157 Fed. 190, 84 C. C. A. 638 (8th Cir.); Hammon v. Hopkins, 143 U. S. 250, 12 Sup. Ct. 418, 36 L. Ed. 134; Foster v. M. C. & L. M. R. Co., 146 U. S. 100, 13 Sup. Ct. 28, 36 L. Ed. 899; Godder v. Kimmel, 99 U. S. 201, 25 L. Ed. 431; Burling v. Newland (Cal.) 39 Pac. 49; Preston v. Horwitz, 85 Md. 164, 36 Atl. 710; Johnson v. Dunn (N. J. Ch.) 29 Atl. 361; German American Seminary v. Kuefer, 43 Mich. 105, 4 N. W. 636; First National Bank v. Strait, 71 Minn. 69, 73 N. W. 645; Bargamin v. Clarke, 20 Grat. (Va.) 544; Streitz v. Hartman, 35 Neb. 406, 53 N. W. 215; Howley v. Von Lankin, 75 Neb. 597, 106 N. W. 456.

In determining whether a suit is barred by laches, time and circumstance are both material. In addition to the long elapse of time in this case is the circumstance that Dorsey, the alleged fraudulent debtor, is dead, two of the persons who were parties to the transfers are also dead, and the real estate has largely increased in value.

It was argued at bar and in the brief, however, that this is not an action for relief on the ground of fraud, but that it is an action to subject property belonging to George W. E. Dorsey to the payment of the judgments; said property now being in the possession of the appellees. Certain cases are cited by counsel for appellants in support of this theory; the principal case being Martin v. Smith, 1 Dill. 85, Fed. Cas. No. 9,164. This was a suit brought by Martin, as the assignee of Woodward, a bankrupt, to recover personal property in the possession of a copartnership, doing business under the name of Smith & Gray. It was claimed by the assignee that, although the name of the firm was Smith & Gray, Smith had no interest in the same, and that Woodward, whose name did not appear, was the real owner of the interest represented by Smith. It was alleged in the bill that Woodward had conveyed the property to Smith in 1861, with intent to defraud his creditors. The statute of limitations of Missouri, in actions for relief on the ground of fraud, was pleaded as a defense to the action brought by Martin. The Missouri statute was practically the same as that of Nebraska, except the period of limitations after the discovery of the fraud was five years instead of four. It appeared at the hearing that Woodward had repaid to Smith all moneys advanced by the latter as a consideration for the conveyance of 1861.

The learned judge in the above case seems to have assumed that, as there was but one civil action in Missouri under the Code Procedure, the statute of limitations of that state was binding both in actions at law and in equity in Missouri; and, in the absence of any legislation by Congress, that it was binding upon the federal courts in equitable actions. He decided that, if the action was one to set aside the conveyance made by Woodward in 1861, the statute barred the action; but he avoided what he thought was the effect of the statute by holding that the action was not one to set aside the conveyance of 1861 for fraud, but to reach assets belonging to Woodward, now in the possession of Smith & Gray, and sustained the bill on that ground. It was further decided in this case that the allegation, in regard to the fraudulent conveyance from Woodward to Smith in 1861, was merely matter of inducement. With great respect for the opinion of the learned judge, we cannot see how Woodward could be held to be the owner

of the property in the possession of Smith & Gray, if the conveyance of 1861 was to stand. The necessary effect of the ruling made, which was to allow the assignee to take the property, was to set aside the conveyance made by Woodward to Smith in 1861. We fail to see how the case cited is authority for the proposition that the present suit is not an action for relief, on the ground of fraud. Weckerly v. Taylor, 74 Neb. 84, 103 N. W. 1065, is cited in support of the proposition that a creditor can reach, with the aid of equity, any property which the debtor might reach with the same aid. The rule laid down is undoubtedly true if the action has not been barred by the statute or laches.

Burke v. Tewkesbury, 3 Neb. (Unof.) 739, 92 N. W. 726, was an action to subject property held in trust to the payment of debts. It was not an action to set aside a fraudulent conveyance. No question in regard to the statute of limitations or laches was considered in the case. It was objected to the right of Burke to maintain the action that he was not a creditor at the time of the conveyance from the debtor to the trustee. It was held that the action was not one to set aside a fraudulent conveyance, and therefore it was not necessary that Burke should have been a creditor at the time the conveyance was made.

O'Connell v. Taney, 16 Colo. 353, 27 Pac. 888, 25 Am. St. Rep. 275, was an action to subject property held in the name of the wife to pay the debts of the husband. It was decided that it was not necessary that the bill should allege that O'Connell was insolvent at the time he made the conveyance to his wife, for the reason that the bill did not seek to set aside the conveyance on the ground of fraud. We see nothing in any of the cases cited to support the proposition that laches cannot be pleaded as a defense to the present action.

We are further of the opinion that, taking the time that has elapsed and the circumstances surrounding the case, justice requires that the claim of appellants be held as barred by laches.

The decree of the trial court is therefore affirmed.