## WELLS FARGO NEVADA NAT. BANK OF SAN FRANCISCO et al. v. BARNETTE.

(Circuit Court of Appeals, Ninth Circuit. May 12, 1924. Rehearing Denied June 16, 1924.)

No. 4178.

1. Deeds ⊂⊃71—Duress by others than grantee not ground for avoidance.

Where the grantee did not instigate, connive in, or have knowledge of the duress, a deed may not be avoided for duress by others.

2. Equity ⊂⊃75—Laches is not affected by bringing a suit which is not prosecuted.

The mere institution of a suit does not relieve from the charge of laches, and if there is a failure of diligent prosecution of the suit the consequences are the same as though no action had been begun.

3. Courts ⊂⊃375—State statute of limitations will be considered by federal court.

While a federal court of chancery is not bound by a statute of limitations, it usually recognizes as of persuasive force the statute of limitations applying to cases of like character.

4. Cancellation of instruments ⊂⊃34(1)—Right to cancellation of deed for duress held barred by laches.

Complainant, with her husband, conveyed her separate property to receivers of an insolvent bank, to be sold for the benefit of depositors. More than seven years later, and after such suit was barred by the statute of limitations of the state, she commenced suit in a federal court to set aside the deed on the ground that it was made under duress. If there was duress, it was not that of the receivers, and any legal duress was removed shortly after the conveyance was made. In the meantime the receivers had sold portions of the property in the execution of their trust. *Held*, that the right to relief was barred by laches.

Appeal and Cross-Appeal from the District Court of the United States for the Southern Division of the Northern District of California; Frank S. Dietrich, Judge.

Suit in equity by Isabella Barnette against the Wells Fargo Nevada National Bank of San Francisco and others. Decree for complainant, and defendants appeal, and plaintiff files cross-appeal. Reversed and remanded, with directions to dismiss.

For opinion below, see 277 Fed. 110.

On January 5, 1911, the Washington-Alaska Bank, a Nevada banking corporation engaged in business at Fairbanks, Alaska, went into the hands of receivers. E. T. Barnette had been the president and manager of the bank from its incorporation. There were 1,400 creditors. In February, 1911, Barnette's wife, the appellee herein, went from Los Angeles to Seattle, where she joined her husband, and with him she proceeded to Fairbanks with the intention of assisting in the liquidation of the bank's business. Six weeks after their arrival at Fairbanks, and after a consultation with their attorney, they executed a trust deed to one of the depositors of the bank as trustee, conveying real estate of Barnette and real estate claimed as the separate property of the appellee, for the benefit of the depositors of the bank and to secure payment of their demands. Acceptance of the deed was refused, on the ground that thereby criminal prosecution of Barnette and enforcement of his civil liability might be prejudiced and waived. Thereafter Barnette and his wife executed a similar deed to the receivers. The receivers refused to accept the trust on the same grounds as those on which the depositor had refused. Thereupon Barnette and his wife filed a petition in the District Court for the territory of Alaska, praying for an order that the receivers be required to accept the trust deed. In that petition they

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

referred to the fact that certain legal proceedings were contemplated and about to be commenced against the petitioners, which would subject their real estate in Alaska to the process of the court and prevent them from dealing with or disposing thereof, and entail great and unnecessary expense, "and," said the petition, "your petitioners desire to prevent the commencement of such legal proceedings and the incurring of said unnecessary and great expense by surrendering all the real estate and lands of the said petitioners to the said receivers. * * * It is the desire and intention of your petitioners, and each of them, that all said depositors in said Washington-Alaska Bank shall be paid in full their respective deposits, with interest thereon at the rate of 6 per cent. per annum." Upon a hearing the court made an order referring the petition to the receivers. They reported adversely, but asked for instructions from the court. The court thereupon made an order instructing the receivers to accept the deeds and administer the trust. The deeds were executed by Barnette and his wife, and the latter acknowledged that she executed them voluntarily "and did not wish to retract." The receivers took possession of the property in Alaska so conveyed, and at the commencement of the present suit they were still administering the trust.

On November 16, 1914, the appellee commenced a suit in the District Court for the territory of Alaska to set aside the deed of her separate property, but when the case came on for trial on August 1, 1918, she took a voluntary nonsuit, having in the meantime, on July 24, 1918, brought in the superior court of the state of California for the county of San Francisco the present suit to set aside her conveyances, which cause was removed to the court below. The substance of the complaint is that, for a long time prior to the execution of the deed whereby her separate property was conveyed to the receivers, the appellee was subjected continuously to duress by depositors and creditors of the bank; that the duress consisted of threats to the effect that such depositors would, unless the appellee joined with her husband in securing the payment of their claims, take the life of the appellee and inflict upon her person great physical and bodily injury, at the same time accusing her husband of having purposely caused the failure and robbed the bank; that they also threatened to cause the arrest, indictment, and imprisonment of her husband for larceny and embezzlement of the funds of the bank, unless their claims were paid or secured; that she believed that those threats would be carried into effect, unless she complied with their demands; that in consequence thereof, and the importunity and solicitation of her husband, she joined in the execution of said trust deed; that at and prior to that time she was ill and suffering from disease and debility, and she was in such physical and mental condition as to be deprived of her free will and her power to assent to the execution of the deed. The complaint further alleged that the receiver had received $52,000, the proceeds of the sale of said property, and deposited the same with the Wells Fargo Nevada National Bank. The prayer of the complaint was that said money be adjudged to be property of the appellee and that the receiver be required to pay the same to her. The answer denied duress, and pleaded laches and ratification of the conveyance and estoppel. The court below found that the trust deed had been executed under duress, and upon the accounting ordered by the court the appellee was awarded $31,000 and costs. From that decree both parties have appealed.

F. De Journel, of Fresno, Cal., and Jerome B. White, Heller, Powers & Ehrman, and Heller, Ehrman, White & McAuliffe, all of San Francisco, Cal., for appellants and cross-appellees.

Wm. H. Chapman and R. P. Henshall, both of San Francisco, Cal., for appellee and cross-appellant.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] We do not find it necessary to inquire whether under the facts as found by

the trial court, the duress was in law such as to render the conveyance voidable. It may be said, in passing, that according to the evidence no duress was practiced by the receivers. Nor is it suggested by pleading or by proof that either the receivers or the great majority of the creditors of the bank were aware that duress had been practiced, or that undue influence had been exerted, to obtain the deed. The reported cases hold that where the grantee of the deed has not instigated the duress, or connived therein, or had knowledge thereof, duress by others is not ground for avoiding the conveyance. Rogers v. Adams, 66 Ala. 600; White v. Graves, 107 Mass. 325, 9 Am. Rep. 38; Green v. Scranage, 19 Iowa, 461, 87 Am. Dec. 447; Sheard v. Laird, 15 Ont. App. Rep. 336.

[2] We are of the opinion, however, that the court below should have dismissed the appellee's bill on the ground of her laches in instituting the suit. Granting that there was local pressure, duress, and threats on the part of certain depositors interested in securing the payment of their claims, and that under such duress the appellee joined in the conveyance, the duress terminated upon her return to Los Angeles in March, 1911. We say terminated, because we are not convinced that the fear that she may still have had that her husband would be prosecuted criminally continued to operate as duress in law. She acquiesced, so far as the record shows, in the transfer of her property from the date of the deed until she brought her action in the Alaskan court in November, 1914. In the meantime, to her knowledge, the property was being administered, sold, and disposed of and the proceeds distributed by the receivers. Nothing was done in her suit in Alaska during the period of 3 years and 8 months. She then caused it to be dismissed. The institution of that suit had no effect to excuse laches in bringing the present suit. It is well settled that the mere institution of a suit does not of itself relieve from the charge of laches, and if there is failure of diligent prosecution of the suit the consequences are the same as though no action had been begun. Johnston v. Standard Mining Co., 148 U. S. 360, 13 Sup. Ct. 585, 37 L. Ed. 480; Willard v. Wood, 164 U. S. 502, 525, 17 Sup. Ct. 176, 41 L. Ed. 531; O'Brien v. Wheelock, 184 U. S. 450, 482, 22 Sup. Ct. 354, 46 L. Ed. 636; Drees v. Waldron, 212 Fed. 93, 128 C. C. A. 609; United States v. Fletcher, 242 Fed. 818, 155 C. C. A. 406; Northrup v. Browne, 204 Fed. 224, 122 C. C. A. 496.

[3] The delay in bringing the present suit is therefore that by which the appellee's laches are to be measured. That delay was 7 years and 4 months. Under the statutes of limitations of California such an action had long been barred. In Bowman v. Wathen, 1 How. 189, 11 L. Ed. 97, the court quoted with approval from Beckford v. Wade, 17 Ves. 87:

"Courts of equity by their own rules, independently of any statutes of limitation, give great effect to length of time, and they refer frequently to the statutes of limitation, for no other purpose than as furnishing a convenient measure for the length of time that ought to operate as a bar in equity of any particular demand."

In Badger v. Badger, 2 Wall. 87, 17 L. Ed. 836, the court said:

"There is a defense peculiar to courts of equity founded on lapse of time and the staleness of the claim, where no statute of limitation governs the case. In such cases, courts of equity act upon their own inherent doctrine

of discouraging, for the peace of society, antiquated demands, refuse to interfere where there has been gross laches in prosecuting the claim, or long acquiescence in the assertion of adverse rights."

It is true that a federal court of chancery is not bound by a statute of limitations, but it usually recognizes as of persuasive force the statute of limitations applying to cases of like character. In Godden v. Kimmell, 99 U. S. 201, 25 L. Ed. 431, it was said:

"The rule still is that, when a party has been guilty of such laches in prosecuting his equitable remedy as would bar him if his title was solely at law, he will be barred in equity, from a wise consideration of the paramount importance of quieting titles."

The rule so declared is well grounded in the decisions and has been applied in numerous cases in which the federal courts have held that, while they are not bound by the statute of limitations, they will usually act or refuse to act in analogy to the state statutes of limitations applicable to cases of like character. Kelley v. Boetcher, 85 Fed. 55, 29 C. C. A. 14; Davey v. Dodge, 213 Fed. 722, 130 C. C. A. 236; Newberry v. Wilkinson, 199 Fed. 673, 118 C. C. A. 111; Smith v. Smith, 224 Fed. 1, 139 C. C. A. 465.

In numerous cases laches have been held a bar, where the delay in applying for equitable relief has been less than the time limit of the statute of limitations. In Harwood v. Railroad Co., 17 Wall. 78, 21 L. Ed. 558, delay of 5 years on the part of stockholders of a railroad company in bringing suit to set aside judicial proceedings under which the company's property was sold was held laches such as would bar relief. In Baker v. Cummings, 169 U. S. 189, 18 Sup. Ct. 367, 42 L. Ed. 711, it was held that 3 years' delay by the plaintiff, in a case where to his knowledge the defendant was proceeding to prosecute certain claims as his own, debarred the plaintiff from proceeding in a court of equity to assert his rights. So in Patterson v. Hewitt, 195 U. S. 309, 319, 25 Sup. Ct. 35, 37 (49 L. Ed. 214) the court observed that in some cases the diligence required is measured by "months rather than by years," and that "a delay of 2, 3, or 4 years has been held fatal."

[4] If we adopt the rule, which some courts have broadly affirmed, that lapse of time does not constitute laches unless some feature of inequity stands in the way of granting equitable relief, we find that such inequity clearly appears in the present case. Neither the depositors nor the receivers asked for the conveyance. Indeed, the receivers refused to accept it when tendered. Against their judgment they were compelled by the court to receive it, and the court's order was the direct result of the appellee's urgent petition. Under oath she and her husband represented to the court that they desired to convey the land to the receivers in trust for the payment of the depositors. So far as the record shows, the receivers were justified in believing that the appellee, in thus surrendering property which had been given her by her husband, was inspired only by her desire to assist him in paying his debts. Immediately after executing the conveyance, the appellee returned to her residence at Los Angeles. There was no duress thereafter. If she continued for a time to fear that her husband might be prosecuted, that fear was not, in law, duress which would justify her failure

promptly to assert her rights. She made no objection to the sale of her property by the receivers. In the year 1914 she joined in the conveyance of some of her property which had been sold by the receivers. She stood by for more than 7 years and permitted the estate to be administered. During her delay conditions have changed, and it is reasonable to assume that to the appellants' disadvantage some witnesses have died and others have drifted away from the jurisdiction in which the transactions here involved occurred, and could not be brought to testify in the court below in a jurisdiction 3,000 miles distant from the place where the cause of suit arose. The receivers by accepting the deed were compelled by its terms to postpone their legal remedies against Barnette until November 18, 1914. The appellee has pleaded no facts, nor has she testified to facts, to excuse her delay or repel the presumption arising from the lapse of time. In Woodmanse & Hewitt Mfg. Co. v. Williams, 68 Fed. 489, 15 C. C. A. 520, Judge Lurton said:

"One who invokes the protection of equity must be 'prompt, eager, and ready' in the enforcement of his rights. Equity will not encourage a suitor who has long slept over his rights."

So in Kittle v. Hall (C. C.) 29 Fed. 511, Judge Coxe said:

"Time passes, memory fails, witnesses die, proof is destroyed, and the rights of individuals and of the public intervene. Long acquiescence and laches can only be excused by proof showing excusable ignorance, or positive inability to proceed on the part of the complainant, or that he is the victim of fraud or concealment on the part of others."

Reversed and remanded, with instruction to dismiss the bill.